**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | | |
|---|---|---|
| **PAMELA MCCAREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 2:20-cv-1744-DSC** |
| **v.** | ) | |
| | ) | **Hon. David Stewart Cercone** |
| **PWC ADVISORY SERVICES LLC &** | ) | |
| **PRICEWATERHOUSECOOPERS LLP,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION**
**TO COMPEL ARBITRATION AND TO STAY THE PROCEEDINGS, OR,**
**IN THE ALTERNATIVE, TO DISMISS**

# TABLE OF CONTENTS

<u>Page</u>

FACTUAL BACKGROUND ................................................................................................ 1

LEGAL STANDARD ....................................................................................................... 3

ARGUMENT ................................................................................................................. 6

      I.     The Court Should Compel Arbitration Under The Arbitration Agreement ........... 6

           A.     The Parties Entered Into A Valid And Enforceable Arbitration
                    Agreement. ........................................................................................... 6

           B.     Plaintiff's Claims Fall Within The Scope Of Her Arbitration
                    Agreement. ......................................................................................... 12

      II.    This Case Should Be Stayed. ............................................................................... 15

      III.   In The Alternative, This Case Should Be Dismissed. .......................................... 16

CONCLUSION .............................................................................................................. 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. Raymours Furniture Co.*,
No. CIV.A. 13-5387, 2014 WL 3952944 (E.D. Pa. Aug. 13, 2014) ...........................10, 12, 15

*Ashford v. PricewaterhouseCoopers LLP*,
954 F.3d 678 (4th Cir. 2020) .................................................................................3, 6, 14

*Associated Builders & Contractors of Se. Texas v. Rung*,
No. 1:16-CV-425, 2016 WL 8188655 (E.D. Tex. Oct. 24, 2016) ..........................................14

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)..................................................................................................................4

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986).........................................................................................................4, 12, 14

*Matter of Ball (SFX Broad. Inc.)*,
665 N.Y.S.2d 444 (N.Y. App. Div. 1997) ...........................................................................8, 12

*Battaglia v. McKendry*,
233 F.3d 720 (3d Cir. 2000).................................................................................................14

*Blair v. Scott Specialty Gases*,
283 F.3d 595 (3d Cir. 2002)..............................................................................................10, 16

*Brayman Constr. Corp. v. Home Ins. Co.*,
319 F.3d 622 (3d Cir. 2003)...................................................................................................4

*In re Burlington Coat Factory Secs. Litig.*,
114 F.3d 1410 (3d Cir. 1997)..................................................................................................5

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*,
584 F.3d 513 (3d Cir. 2009)...........................................................................................6, 12, 15

*Chatziplis v. PricewaterhouseCoopers LLP*,
No. 17-CIV-4109 ER, 2018 WL 3323820 (S.D.N.Y. 2018) ...................................................6

*Credit Suisse First Boston Corp. v. Pitofsky*,
824 N.E.2d 929 (N.Y. 2005).....................................................................................................8

*Curtis v. Cintas Corp.*,
229 F. Supp. 3d 312 (E.D. Pa. 2017) ......................................................................................5

*Davis v. Cintas Corp.*,
No. 2:18-cv-01200, 2019 WL 2223486 (W.D. Pa. May 23, 2019) ......................................4, 5

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ..........................................................................................................4

*Dimattei v. Diskin Motors, Inc.*,
    No. CV 16-5183, 2017 WL 1283943 (E.D. Pa. Apr. 6, 2017) .................................5

*Dixon v. NBCUniversal Media, LLC*,
    947 F. Supp. 2d 390 (S.D.N.Y. 2013) ......................................................................8

*Edmondson v. Lilliston Ford, Inc.*,
    593 F. App'x 108 (3d Cir. 2014) ...........................................................................15

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ............................................................................................4

*Fellows v. Career Sys. Dev't Corp.*,
    2:16-cv-00718-TFM, 2016 WL 4010964 (W.D. Pa. July 27, 2016) .....................15

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) ................................................................................................7

*Graham v. Command Sec. Corp.*,
    13 N.Y.S.3d 850 (N.Y. Sup. 2014) ..........................................................................8

*Grant v. Phila. Eagles, LLC*,
    No. 09-1222, 2009 WL 1845231 (E.D. Pa. June 24, 2009) ...................................10

*Guidotti v. Legal Helpers Debt Resolution, LLC*,
    716 F.3d 764 (3d Cir. 2013) .....................................................................................5

*Hamilton v. Travelers Prop. & Cas. Corp.*,
    No. CIV. A. 01-11, 2001 WL 503387 (E.D. Pa. May 11, 2001) .............................9

*Harrell v. PricewaterhouseCoopers LLP*,
    No. 3:16-cv-3371, ECF No. 18 (N.D. Tex. Jan. 12, 2017) ......................................6

*Hewitt v. Rose Grp.*,
    No. 15-5992, 2016 WL 2893350 (E.D. Pa. Mar. 21, 2016) .....................................5

*Hoffman v. Compassus*,
    No. 18-cv-0776, 2019 WL 1791413 (E.D. Pa. April 23, 2019) ....................9, 10, 11

*Kerrigan v. Otsuka Am. Pharm., Inc.*,
    560 F. App'x 162 (3d Cir. 2014) ...........................................................................7

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Kopple v. Stonebrook Fund Mgmt., LLC*,
   794 N.Y.S.2d 648 (N.Y. App. Div. 2005) .........................................................8, 12

*Kruzits v. Okuma Mach. Tool, Inc.*,
   40 F.3d 52 (3d Cir. 1994).........................................................................................7

*Liberty Mut. Fire Ins. Co. v. Yoder*,
   112 F. App'x 826 (3d Cir. 2004) ............................................................................4

*Lloyd v. HOVENSA, LLC*,
   369 F.3d 263 (3d Cir. 2004).............................................................................15, 16

*Manigault v. Macy's E., LLC*,
   318 F. App'x 6 (2d Cir. 2009) ...........................................................................7, 11

*Masoner v. Educ. Mgmt. Corp.*,
   18 F. Supp. 3d 652 (W.D. Pa. 2014).............................................................10, 11, 12

*Medtronic AVE Inc. v. Cordis Corp.*,
   100 F. App'x 865 (3d Cir. 2004) ..........................................................................12

*Morina v. Neiman Marcus Grp., Inc.*,
   No. CIV.A. 14-1394, 2014 WL 4933022 (E.D. Pa. Oct. 1, 2014)....................10, 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)....................................................................................................4

*Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*,
   587 A.2d 1346 (Pa. 1991) .......................................................................................9

*Mumma v. Pennsy Supply, Inc.*,
   448 F. App'x 295 (3d Cir. 2011) ...........................................................................16

*Nationwide Ins. Co. of Columbus, Oh. v. Patterson*,
   953 F.2d 44 (3d Cir. 1991).......................................................................................4

*Phoenix Lithographing Corp. v. Bind Rite Servs., Inc.*,
   27 F. Supp. 3d 636 (E.D. Pa. 2014) .......................................................................7

*Porzio v. PricewaterhouseCoopers LLC*,
   No. 159531/2018 (N.Y. Sup. Ct. June 25, 2019).....................................................6

*Register.com, Inc. v. Verio, Inc.*,
   356 F.3d 393 (2d Cir. 2004)....................................................................................6

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Riffin v. Consol. Rail Corp.*,
    363 F. Supp. 3d 569 (E.D. Pa. 2019) ...................................................................7

*Sablosky v. Edward S. Gordon Co.*,
    73 N.Y.2d 133 (N.Y. 1989) ...............................................................................8

*Scott v. Educ. Mgmt. Corp.*,
    662 F. App'x 126 (3d Cir. 2016) ....................................................................9, 10

*Spano v. Ohio Hospice & Palliative Care*,
    No. 2:17-CV-717, 2019 WL 6910076 (W.D. Pa. Dec. 19, 2019) ...........................8

*TMG Health, Inc. v. Unitedhealth Grp., Inc.*,
    Civ. A. No. 07–115, 2007 WL 1258133 (E.D. Pa. Apr. 27, 2007)........................12

*Venuto v. Ins. Co. of N.A.*,
    No. CIV. A. 98-96, 1998 WL 414723 (E.D. Pa. July 22, 1998)........................9, 10

*Weiss v. Macy's Retail Holdings, Inc.*,
    741 F. App'x 24 (2d Cir. 2018) ..........................................................................7

*Wetzel v. Baldwin Hardware Corp.*,
    No. CIV. 98-3257, 1999 WL 54563 (E.D. Pa. Jan. 29, 1999)...............................9

*Williams v. Stone*,
    109 F.3d 890 (3d Cir. 1997).................................................................................7

**Statutes**

9 U.S.C. § 2...................................................................................................................3

9 U.S.C. § 3.................................................................................................................15

9 U.S.C. § 4...................................................................................................................3

**Regulations**

48 C.F.R. § 222.7402..................................................................................................13

48 C.F.R. § 252.222-7006..........................................................................................13

Exec. Order No. 13673 (2014)...................................................................................14

Plaintiff Pamela McCarey's claims against Defendants PwC Advisory Services LLC and PricewaterhouseCoopers LLP (together, "PwC") do not belong in this Court.  In 2014, Plaintiff agreed to arbitrate all claims "relating to or arising out of" her employment with PwC or her separation from that employment.  Nevertheless, Plaintiff now seeks to pursue discrimination claims under federal, state, and local law "relating to or arising out of" her employment with PwC in federal court.  Because Plaintiff's claims fall within the scope of her valid and enforceable arbitration agreement, this Court should compel her claims to arbitration and stay this case, or, in the alternative, dismiss Plaintiff's Complaint.

## FACTUAL BACKGROUND

Plaintiff is a former employee of PwC.  Dkt. 1 ("Compl.") ¶¶ 17–18.  She worked for PwC in Pittsburgh, Pennsylvania from 1997 to 2019.  *Id.* ¶ 17.

In 2014, PwC adopted an arbitration program for its employees.  *See* Decl. of Carrie Levine ("Levine Decl.") ¶ 3, attached hereto as Ex. 1; Decl. of Ronald A. Bertino ("Bertino Decl.") ¶ 3, attached hereto as Ex. 2.  On March 31, 2014, PwC sent Plaintiff an arbitration agreement by both email and first-class mail.  Levine Decl. ¶ 4 & Ex. A ("Arbitration Agreement"), Ex. B (transmittal email); Bertino Decl. ¶ 6 & Ex. A (transmittal letter and arbitration agreement).  In its transmittal email and letter, PwC explained to Plaintiff in **bold** font that:  "**Under the agreement, you and the firm mutually waive the right to a trial before a judge or jury in court in favor of arbitration for all covered claims.**"  Levine Decl. Ex. B at 1; Bertino Decl. Ex. A at 1.

PwC also explained in the transmittal email and letter that Plaintiff did not need to sign the arbitration agreement in order to accept it:

> The agreement will become effective on July 1, 2014, and **your continued employment with the firm on or after that date will indicate that you have accepted the terms of the agreement**.  Please note that **your signature is NOT required for acceptance of the agreement.  You will be deemed to have accepted, and will be bound by, the agreement if you continue your**

**employment with the firm on or after July 1, 2014.**

Levine Decl. Ex. B at 1; Bertino Decl. Ex. A at 1.  Similarly, the Arbitration Agreement provides: "**By continuing your employment with the Firm on or after the Effective Date, you will be deemed to have accepted this Agreement, and you and the Firm will be bound by its terms.**" Arbitration Agreement ¶ 1.a.

Plaintiff proceeded to accept the Arbitration Agreement by continuing to work for PwC after July 1, 2014.  *See* Compl. ¶ 33 (noting that Plaintiff's employment with PwC continued until her separation on June 28, 2019).  In her Arbitration Agreement, Plaintiff agreed to arbitrate "all Covered Claims" including "all disputes, controversies and claims relating to or arising out of . . . [her] employment with [PwC]" and her "separation from such employment."  Arbitration Agreement ¶¶ 1.a, 1.c.

Plaintiff reaffirmed her acceptance of the Arbitration Agreement one month later, when she was promoted to the position of Managing Director on July 31, 2014.  *See* Compl. ¶ 18 (noting that Plaintiff was promoted to Managing Director in or about 2014); *see also* Levine Decl. ¶ 7 & Ex. C ("Employment Agreement").  In her Employment Agreement, which Plaintiff signed, Plaintiff acknowledged that "any existing agreements with the Firm regarding repayment obligations or dispute resolution through arbitration . . . shall remain in full force and effect in accordance with their terms."  Employment Agreement ¶ 18.

Plaintiff's employment with PwC ended on June 28, 2019.  *See* Compl. ¶ 33.  On November 8, 2019, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging age and gender discrimination.  *See id.* ¶ 13 & Ex. A (Charge of Discrimination).  On August 15, 2020, the EEOC dismissed Plaintiff's charge, explaining that "the EEOC is unable to conclude that the information obtained establishes violations of the statutes."  *See* Compl. ¶ 14 & Ex. B (Dismissal and Notice of Rights).

In February 2020, while Plaintiff's EEOC charge was pending, Defendants' counsel informed Plaintiff's counsel that Plaintiff's claims were subject to an arbitration agreement.  Decl. of Jason C. Schwartz ("Schwartz Decl.") ¶ 3, attached hereto as Ex. 3.  Nevertheless, on November 12, 2020, despite having agreed to arbitrate "all disputes, controversies and claims relating to or arising out of . . . [her] employment with [PwC]" and her "separation from such employment," *see* Arbitration Agreement ¶ 1.c, Plaintiff filed this lawsuit against PwC in federal district court.  In the Complaint, Plaintiff alleges that PwC violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*, and the City of Pittsburgh Fair Employment Ordinance, Chapter 659.02, *see* Compl. at 1.  In particular, Plaintiff alleges that PwC discriminated against her based on her age and gender when PwC decided not to give her a salary increase or to make her a Partner and when it terminated her employment.  *Id.* ¶¶ 44–48.

On November 23, 2020, Defendants' counsel provided Plaintiff's counsel with a copy of the Arbitration Agreement and the corresponding transmittal email and again explained that Plaintiff is bound to arbitrate her claims.  Schwartz Decl. ¶ 4 & Ex. A (email correspondence).  On January 5, 2021, Defendants' counsel spoke again with Plaintiff's counsel and, at Plaintiff's counsel's request, provided a copy of a recent Fourth Circuit decision finding PwC's arbitration agreement to be enforceable, *Ashford v. PricewaterhouseCoopers LLP*, 954 F.3d 678 (4th Cir. 2020).  Schwartz Decl. ¶ 5.  Nevertheless, Plaintiff has not withdrawn her Complaint. Accordingly, PwC now moves to compel arbitration.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") requires the arbitration of any dispute covered by a valid arbitration agreement.  *See* 9 U.S.C. §§ 2, 4.  Enacted to supersede "widespread judicial hostility to arbitration agreements," the FAA reflects a "liberal . . . policy favoring arbitration."

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks omitted).   In accordance with this liberal policy favoring arbitration, courts must "rigorously . . . enforce arbitration agreements according to their terms." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quotation marks omitted).

The FAA "mandates that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir. 2003) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).   In other words, "the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (explaining that courts must order arbitration absent "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" (internal quotation marks omitted)).

In the Third Circuit, courts review a motion to compel arbitration under the Rule 12(b)(6) standard. *See, e.g.*, *Nationwide Ins. Co. of Columbus, Oh. v. Patterson*, 953 F.2d 44, 45 n.1 (3d Cir. 1991) (noting that the 12(b)(6) standard applies to a motion to compel arbitration); *see also Liberty Mut. Fire Ins. Co. v. Yoder*, 112 F. App'x 826, 828 (3d Cir. 2004) (explaining that Rule 12(b)(6), rather than Rule 12(b)(1), is the appropriate vehicle to seek to compel arbitration). Applying this standard is appropriate even when the complaint itself does not mention the arbitration agreement if the agreement is "'integral'" to the complaint and the agreement's authenticity is not in dispute. *See, e.g.*, *Davis v. Cintas Corp.*, No. 2:18-cv-01200, 2019 WL 2223486, at *3 (W.D. Pa. May 23, 2019) (applying the Rule 12(b)(6) standard and granting motion

to compel arbitration where the plaintiff "raise[d] *legal* arguments as to why the agreement to arbitrate" is unenforceable "but the material facts surrounding his acceptance of the Agreement and its terms are not fairly in dispute"); *Curtis v. Cintas Corp.*, 229 F. Supp. 3d 312, 315–16 (E.D. Pa. 2017) (similar); *see In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting that a court may consider a "document integral to . . . the complaint" without converting a motion to dismiss to a motion for summary judgment) (internal quotation marks and emphasis omitted).  "It would frustrate the purposes of the Federal Arbitration Act if plaintiffs could avoid having their claims quickly compelled to arbitration simply by failing to mention the existence of clearly applicable arbitration agreements in their complaints." *Hewitt v. Rose Grp.*, No. 15-5992, 2016 WL 2893350, at *2 n.1 (E.D. Pa. Mar. 21, 2016) (applying Rule 12(b)(6) standard and compelling arbitration).  Here, documents integral to the Complaint—Plaintiff's employment agreement and the arbitration agreement incorporated therein—make clear that Plaintiff's claims "'are subject to an enforceable arbitration clause,'" so the Rule 12(b)(6) standard is appropriate.  *See Davis*, 2019 WL 2223486, at *2 (quoting *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 774 (3d Cir. 2013)).

Courts in this Circuit also consider motions to compel arbitration brought under Federal Rule of Civil Procedure 12(b)(1).  *See, e.g.*, *Dimattei v. Diskin Motors, Inc.*, No. CV 16-5183, 2017 WL 1283943, at *1 (E.D. Pa. Apr. 6, 2017) (collecting cases and granting motion to compel arbitration under Rule 12(b)(1)).  Regardless of the rule relied on, a court must order arbitration when "(1) the parties entered into a valid agreement to arbitrate, and (2) the plaintiff's claims fall within the scope of that arbitration agreement." *Id.* at *2; *see, e.g.*, *Davis*, 2019 WL 2223486, at *4.

## ARGUMENT

### I.     The Court Should Compel Arbitration Under The Arbitration Agreement.

Plaintiff's claims are subject to arbitration under the plain terms of the Arbitration Agreement.  Plaintiff entered into a valid and enforceable contract with PwC, in which she agreed to arbitrate "all disputes, controversies and claims relating to or arising out of . . . [her] employment with [PwC]" and her "separation from such employment."  Arbitration Agreement ¶ 1.c.  Because Plaintiff's claims "fall[] within the scope of" this valid "agreement to arbitrate," the Court should compel arbitration of her claims.  *See Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009).

### A.     The Parties Entered Into A Valid And Enforceable Arbitration Agreement.

Plaintiff is bound by a valid agreement to arbitrate.  Plaintiff assented to the Arbitration Agreement by its express terms: by continuing her employment with PwC.  Arbitration Agreement ¶ 1.a ("**By continuing your employment with the Firm on or after the Effective Date, you will be deemed to have accepted this Agreement, and you and the Firm will be bound by its terms.**").  In exchange, Plaintiff received valuable consideration: continued employment and PwC's mutual promise to arbitrate.  *Id.* ¶¶ 1.a, 1.c–1.d.  Plaintiff thus must arbitrate her claims.[1]

Under New York substantive law—selected in the Arbitration Agreement's choice-of-law clause (Arbitration Agreement ¶ 5)—contract formation requires "offer, acceptance, consideration, mutual assent and intent to be bound."  *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d

---

[1] Courts have repeatedly found PwC's arbitration agreements to be valid and enforceable.  *See, e.g.*, *Ashford*, 954 F.3d at 683–86 (reversing and remanding with instructions to dismiss the complaint and compel arbitration); *Chatziplis v. PricewaterhouseCoopers LLP*, No. 17-CIV-4109 ER, 2018 WL 3323820, at *1 (S.D.N.Y. 2018) (granting motion to compel arbitration and staying case); *Harrell v. PricewaterhouseCoopers LLP*, No. 3:16-cv-3771, ECF No. 18 (N.D. Tex. Jan. 12, 2017) (same); *Porzio v. PricewaterhouseCoopers LLC*, No. 159531/2018 (N.Y. Sup. Ct. June 25, 2019) (same).

Cir. 2004) (internal quotation marks omitted).[2]  "A contract may be formed by words or by conduct that demonstrate the parties' mutual assent."  *Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009).   "An employee may consent to a modification to the terms of employment by continuing to work after receiving notice of the modification."  *Id.*  An employee need not sign an arbitration agreement in order for it to be binding.  *Id.*; *see also Weiss v. Macy's Retail Holdings, Inc.*, 741 F. App'x 24, 27 (2d Cir. 2018) (concluding that silence and inaction upon receipt of dispute resolution program informational packet bound plaintiff to arbitrate dispute with employer).   Rather, "continued employment, without more, is sufficient to manifest assent."  *Manigault*, 318 F. App'x at 8 (concluding that because plaintiff "continued to work after receiving notice of the [arbitration] program," she "agreed to arbitration by continuing with her

---

[2]  The Arbitration Agreement's choice-of-law provision states: "This Agreement shall be governed by the FAA and, to the extent, if any, that the FAA is held not to apply, by the law of the State of New York, without regard to its conflict of laws principles (including for purposes of determining contract formation)."  Arbitration Agreement ¶ 5.  Under the FAA, state contract law governs any questions of whether the parties formed a valid agreement.  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).  To determine which state's substantive law applies, federal courts exercising federal question jurisdiction look to the choice-of-law doctrine of the forum state.  *Riffin v. Consol. Rail Corp.*, 363 F. Supp. 3d 569, 575 (E.D. Pa.), *aff'd*, 783 F. App'x 246 (3d Cir. 2019).  Under Pennsylvania's choice-of-law principles, however, "the Court should avoid the choice-of-law question" "where the laws of the two jurisdictions would produce the same result on the particular issue presented."  *Phoenix Lithographing Corp. v. Bind Rite Servs., Inc.*, 27 F. Supp. 3d 636, 640 (E.D. Pa. 2014) (internal quotation marks omitted); *see also Kerrigan v. Otsuka Am. Pharm., Inc.*, 560 F. App'x 162, 167 (3d Cir. 2014).  Because the outcome here is the same under both New York and Pennsylvania law, *infra* at 6–12, the Court need not resolve any choice-of-law issues.  *See Williams v. Stone*, 109 F.3d 890, 896 (3d Cir. 1997) (concluding that "the Court need not address the choice-of-law issues" because the outcome would be the same under Pennsylvania and Maryland law).  However, to the extent that the Court determines there is a conflict between New York and Pennsylvania law, New York law controls under Pennsylvania's choice-of-law principles applicable to contract disputes.  *See Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (explaining that under Pennsylvania's choice-of-law principles, "courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts," and applying Section 187 of Restatement, Second, Conflict of Laws to enforce the contract's choice-of-law provision).

employment"); *see Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390, 400 (S.D.N.Y. 2013) (collecting cases and concluding that plaintiff's "continued employment . . . constituted acceptance of the binding arbitration agreement").

Continued at-will employment is sufficient consideration to support an arbitration agreement under New York law. *Matter of Ball (SFX Broad. Inc.)*, 665 N.Y.S.2d 444, 446 (N.Y. App. Div. 1997) (concluding that there was sufficient consideration to support at-will employment agreement, including arbitration provision, based on employee's "rendition of those services which benefited [the employer]"); *Graham v. Command Sec. Corp.*, 13 N.Y.S.3d 850, at *9 (N.Y. Sup. 2014) (explaining that "in the at-will employment context," if an arbitration agreement "is presented after hire, courts find that the employer's agreement to continue to employ the employee is deemed 'sufficient consideration to render an arbitration agreement binding'"); *see also Credit Suisse First Boston Corp. v. Pitofsky*, 824 N.E.2d 929, 932 (N.Y. 2005) (concluding that "continued, lucrative employment" constituted receipt of "valuable consideration").

In addition, a mutual promise to arbitrate provides independent, sufficient consideration to support an arbitration agreement under New York law. *Kopple v. Stonebrook Fund Mgmt., LLC*, 794 N.Y.S.2d 648, 648, (N.Y. App. Div. 2005) ("The parties' mutual promises to arbitrate constituted consideration sufficient to support the arbitration agreement."); *see also Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 137 (N.Y. 1989) (noting that "coextensive promises may constitute consideration for each other" in the context of arbitration contracts) (internal quotation marks omitted).

To the extent that Plaintiff argues Pennsylvania law should apply, the outcome is the same. As in New York, in Pennsylvania, "[a]n enforceable contract requires an offer, acceptance, and consideration." *Spano v. Ohio Hospice & Palliative Care*, No. 2:17-CV-717, 2019 WL 6910076,

at *2 (W.D. Pa. Dec. 19, 2019) (citing *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*, 587 A.2d 1346, 1349 (Pa. 1991)).  Under Pennsylvania law, continued employment may constitute an employee's acceptance of an arbitration agreement, even if the employee does not sign the agreement.  *Hoffman v. Compassus*, No. 18-cv-0776, 2019 WL 1791413, at *7–8 (E.D. Pa. April 23, 2019) (concluding that "by continuing her employment" after the time period specified in the arbitration agreement, plaintiff "accepted [its] terms and provided consideration to form a binding contract" even though "she did not sign the [agreement] on the signature page"); *Hamilton v. Travelers Prop. & Cas. Corp.*, No. CIV. A. 01-11, 2001 WL 503387, at *2 (E.D. Pa. May 11, 2001) (granting motion to compel arbitration because "[plaintiff's] continued employment for approximately two years after being made aware of the future implementation of the employee arbitration policy is sufficient to constitute both acceptance of the Company's offer as well as consideration for an enforceable arbitration agreement"); *Venuto v. Ins. Co. of N.A.*, No. CIV. A. 98-96, 1998 WL 414723, at *4, *6 (E.D. Pa. July 22, 1998) (granting motion to compel arbitration where plaintiff, "an at-will employee, was notified of [the arbitration] policy and, by her extended continued employment, accepted and became bound by this arbitration policy" even though she "did not participate in drafting the agreement, verbally assent, or sign anything to demonstrate her agreement"); *see also Wetzel v. Baldwin Hardware Corp.*, No. CIV. 98-3257, 1999 WL 54563, at *3 (E.D. Pa. Jan. 29, 1999) (finding that arbitration agreement was valid and enforceable even though employee did not sign it, but denying motion to compel arbitration because, unlike here, employee filed EEOC charge before arbitration agreement took effect).[3]

---

[3] In the limited circumstance where an employee "expressly disavow[s]" assent by "promptly voic[ing] their specific objection to and rejection of" an arbitration agreement, continued employment may not constitute assent.  *See Scott v. Educ. Mgmt. Corp.*, 662 F. App'x 126, 130–31 (3d Cir. 2016).  By contrast, where, as here, an employee continues her employment after she receives an arbitration agreement, does not object to that agreement, and subsequently

Similarly, under Pennsylvania law, continued at-will employment is sufficient consideration to support an arbitration agreement. *Alexander v. Raymours Furniture Co.*, No. CIV.A. 13-5387, 2014 WL 3952944, at *5 (E.D. Pa. Aug. 13, 2014) (granting motion to compel arbitration of at-will employee's claims and noting that "[n]umerous courts in this district have held 'continued employment fulfills the consideration requirement [for an arbitration agreement] under Pennsylvania law'" (quoting *Grant v. Phila. Eagles, LLC*, No. 09-1222, 2009 WL 1845231, at *5 (E.D. Pa. June 24, 2009))); *Venuto*, 1998 WL 414723, at *4 (holding that at-will employee's continued employment provided adequate consideration for arbitration provision); *see also Hoffman*, 2019 WL 1791413, at *8.

Separately, a mutual promise to arbitrate is also adequate consideration on its own to support an arbitration agreement under Pennsylvania law. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) ("When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced."); *see also Morina v. Neiman Marcus Grp., Inc.*, No. CIV.A. 14-1394, 2014 WL 4933022, at *10 n.6 (E.D. Pa. Oct. 1, 2014); *Grant*, 2009 WL 1845231, at *5.

Plaintiff therefore cannot evade her obligation to arbitrate her claims simply because she did not sign the Arbitration Agreement, regardless of whether New York or Pennsylvania law applies.  Here, the Arbitration Agreement was clear: continued employment would constitute assent.  It stated in bold print: "**By continuing your employment with the Firm on or after the Effective Date, you will be deemed to have accepted this Agreement, and you and the Firm**

---

"accept[s] and agree[s] to abide by all [of the employer's] then-existing policies" in conjunction with a promotion, continued employment constitutes assent. *See Masoner v. Educ. Mgmt. Corp.*, 18 F. Supp. 3d 652, 656 (W.D. Pa. 2014); *see also Scott*, 662 F. App'x at 131 (distinguishing *Masoner*).

**will be bound by its terms**."  Arbitration Agreement ¶ 1.a.  Similarly, the transmittal email explained to Plaintiff, also in bold print, that "**your continued employment with the firm on or after that date will indicate that you have accepted the terms of the agreement**." Ex. B.  It states that "**your signature is NOT required for acceptance of the agreement**," but rather "**You will be deemed to have accepted, and will be bound by, the agreement if you continue your employment with the firm on or after July 1, 2014.**"  *Id.*  Therefore, there is no doubt that Plaintiff was on notice *both* of the requirement to arbitrate her claims *and* that continued employment would constitute acceptance of the agreement.  And as Plaintiff admits, she continued her employment with PwC until 2019.  *See* Compl. ¶ 33.  Thus, Plaintiff assented to the Arbitration Agreement.  *See, e.g.*, *Manigault*, 318 F. App'x at 8; *Hoffman*, 2019 WL 1791413, at *8.

Not only did Plaintiff assent to the Arbitration Agreement by its express terms (continued employment), but also one month after the Arbitration Agreement became effective on July 1, 2014, she reaffirmed her obligation to arbitrate when she executed her Employment Agreement as a Managing Director on July 31, 2014.  *See* Employment Agreement at 7; Compl. ¶ 18.  In the Employment Agreement, which Plaintiff signed, Plaintiff acknowledged that the "Employment Agreement supersedes all prior oral or written agreements or understandings with the Firm, except for any existing agreements with the Firm regarding . . . **dispute resolution through arbitration, which shall remain in full force and effect in accordance with their terms.**"  *Id.* ¶ 18 (emphasis added).  In other words, just one month after the Arbitration Agreement took effect, Plaintiff signed an Employment Agreement that confirmed the Arbitration Agreement remained in force.  *See Masoner v. Educ. Mgmt. Corp.*, 18 F. Supp. 3d 652, 660 (W.D. Pa. 2014) (finding that plaintiff "manifested a clear intention to be bound" by arbitration policy "when she was promoted and agreed to abide by all [of the employer's] policies").  Accordingly, Plaintiff agreed to the

Arbitration Agreement by its specific terms by continuing to work for PwC, and shortly thereafter acknowledged it in writing when she executed her Employment Agreement.

In exchange for her agreement to arbitrate, Plaintiff received two forms of consideration that were each independently sufficient to support the Arbitration Agreement. First, she received continued employment with PwC. Arbitration Agreement ¶ 1.a; *see, e.g.*, *Matter of Ball*, 665 N.Y.S.2d at 446; *Alexander*, 2014 WL 3952944, at *5. Second, she received PwC's mutual agreement to arbitrate claims it may have against Plaintiff. Arbitration Agreement ¶¶ 1.c–1.d; *see, e.g.*, *Kopple*, 794 N.Y.S.2d at 648; *Morina*, 2014 WL 4933022, at *10 n.6. Moreover, Plaintiff subsequently received a promotion in exchange for her reaffirmation of the promise to arbitrate, among other things. *See* Arbitration Agreement ¶ 18; *see Masoner*, 18 F. Supp. 3d at 660.

Therefore, there can be no dispute that a valid arbitration agreement exists and that Plaintiff is bound by that agreement.

### B.    Plaintiff's Claims Fall Within The Scope Of Her Arbitration Agreement.

The second requirement for enforcing an arbitration agreement is that "the dispute at issue falls within the scope of that agreement." *Century Indem. Co.*, 584 F.3d at 523. There is a "'presumption of arbitrability'" at this step that is overcome only if "'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* at 524 (quoting *AT&T Techs., Inc.*, 475 U.S. at 649).

Here, Plaintiff agreed to arbitrate "all disputes, controversies and claims relating to or arising out of . . . [her] employment with [PwC]" and her "separation from such employment," besides those "expressly set forth" separately. *See* Arbitration Agreement ¶ 1.c. An arbitration agreement that provides that "any controversy, claim or dispute arising out of or relating" to an issue is subject to arbitration is "of the broadest nature." *TMG Health, Inc. v. Unitedhealth Grp., Inc.*, Civ. A. No. 07–115, 2007 WL 1258133, at *1 (E.D. Pa. Apr. 27, 2007) (citing *Medtronic*

*AVE Inc. v. Cordis Corp.*, 100 F. App'x 865, 868–69 (3d Cir. 2004) (quotation marks and ellipsis omitted)).   Moreover, Plaintiff specifically agreed to arbitrate  "claims under . . . the Age Discrimination in Employment Act, . . . state and local laws concerning discrimination and retaliation, and any other federal, state and local laws regarding employment."  *See* Arbitration Agreement ¶ 1.c.  Plaintiff's allegations here—*i.e.*, that PwC allegedly discriminated against her because of her age and gender when PwC terminated her employment and did not give her a salary increase or make her a Partner in violation of federal, state, and local laws concerning discrimination, *see* Compl. ¶¶ 44–48—clearly fall within the Arbitration Agreement's scope.

Plaintiff's Title VII claim must also be submitted to mandatory arbitration.  The Arbitration Agreement does exclude Title VII claims from the definition of "Covered Claims," but only "unless and until federal law no longer prohibits the Firm from mandating arbitration of such claims."  Arbitration Agreement ¶ 1.d.viii ("Title VII Exclusion").

The Title VII Exclusion's flexible language is a reflection of the fluidity of the law and facts that existed when the Arbitration Agreement was drafted and that could continue over time. When Plaintiff assented to her arbitration agreement, there were two federal laws that potentially could have restricted PwC's ability to require Plaintiff to arbitrate Title VII claims.  First, the Franken Amendment (which was enacted in 2010), its implementing regulations (which include a prescribed contract clause), and the contracts executed pursuant thereto operate to prohibit federal contractors with certain "[Department of Defense] contract[s] . . . in excess of $1 million" from mandating arbitration of Title VII claims.  *See* 48 C.F.R. §§ 222.7402(a)(1)(i), 252.222-7006. PwC had at times been—and could have again in the future become—a covered contractor under the Franken Amendment and therefore unable to require employees to arbitrate Title VII claims. *See id.* § 222.7402.  Second, Executive Order 13673 aimed to prohibit companies with *any* non-

commercial federal contracts—not just Department of Defense contracts—greater than $1 million from mandating arbitration of employees' Title VII claims. *See* Exec. Order No. 13673 (2014). The Executive Order's implementing regulations were enjoined by a federal court before they ever took effect. *See Associated Builders & Contractors of Se. Texas v. Rung*, No. 1:16-CV-425, 2016 WL 8188655 (E.D. Tex. Oct. 24, 2016).

At the time Plaintiff filed suit (and now), PwC was not "party to any non-commercial contract with the U.S. Department of Defense in excess of $1 million," and thus the Franken Amendment did not operate to prohibit PwC from requiring her to arbitrate her Title VII claims. Decl. of Don McCrory ¶ 3, attached hereto as Ex. 4; *see also Ashford*, 954 F.3d at 683–84 (holding that "PwC ceased performing the type of defense contracting work that subjected it to the Franken Amendment" by 2015).[4] Nor did Executive Order 13673 restrict PwC's ability to require Plaintiff to arbitrate Title VII claims, as it never took effect. "As a result, the federal law prohibiting mandatory arbitration of such claims no longer applie[s] to PwC." *Ashford*, 954 F.3d at 684. Like Plaintiff's other claims, her Title VII claim is, therefore, subject to mandatory arbitration under the plain terms of the Arbitration Agreement.

To the extent there is any conceivable remaining doubt as to whether Plaintiff's claims fall within the Arbitration Agreement (which there should not be), such "[d]oubt[] should be resolved in favor of coverage." *AT & T Techs.*, 475 U.S. at 650 (internal quotation marks omitted); *see Battaglia v. McKendry*, 233 F.3d 720, 725 (3d Cir. 2000). Consistent with this directive, in construing the scope of an arbitration clause, the Third Circuit gives "phrases such as . . . 'arising out of' . . . in arbitration provisions . . . broad construction." *Battaglia*, 233 F.3d at 727. Here,

---

[4] As noted above, Defendants' counsel provided Plaintiff's counsel a copy of the Fourth Circuit's decision in *Ashford* upon request on January 5, 2021. *See* Schwartz Decl. ¶ 5.

there can be no question that, even without that mandated broad construction, Plaintiff's claims of alleged age and gender discrimination "relat[e] to or aris[e] out of . . . [her] employment with [PwC]," and are therefore encompassed by the Arbitration Agreement.

***

Plaintiff has a clear "agreement to arbitrate" with PwC, and this entire dispute "falls within the scope of that agreement." *Century Indem. Co.*, 584 F.3d at 523.  Accordingly, the Court should compel Plaintiff's claims to arbitration.

## II.    This Case Should Be Stayed.

Under Section 3 of the FAA, a court shall enter a stay pending arbitration when any issue brought before it is subject to a written arbitration agreement and a party applies for a stay pending arbitration.   9 U.S.C. § 3; *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) ("[W]henever suit is brought on an arbitrable claim, the Court 'shall' upon application stay the litigation until arbitration has been concluded."); *see Edmondson v. Lilliston Ford, Inc.*, 593 F. App'x 108, 111 (3d Cir. 2014) ("[A] motion to stay under § 3 may not be denied if any issue is arbitrable under a valid, enforceable arbitration agreement.").   The Third Circuit has held that the "plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." *Lloyd*, 369 F.3d at 269 (reversing order dismissing complaint and remanding with instructions to compel arbitration and stay the case).  Here, PwC has applied for a stay pending arbitration.  Therefore, a stay is appropriate.  *See Fellows v. Career Sys. Dev't Corp.*, 2:16-cv-00718-TFM, 2016 WL 4010964, at *6 (W.D. Pa. July 27, 2016) (ordering a stay pending arbitration because the issues brought before it were subject to a written arbitration clause); *Alexander*, 2014 WL 3952944, at *6 (same).

**III.    In The Alternative, This Case Should Be Dismissed.**

PwC respectfully requests that the Court stay this case pending the outcome of arbitration. However, in the alternative, PwC asks the Court to compel arbitration and dismiss the case.  When, as here, "all the claims involved in an action are arbitrable," it may be "appropriate" to "dismiss the proceedings . . . for reasons of judicial efficiency."  *Blair*, 283 F.3d at 600 (internal quotation marks and citations omitted); *see also, e.g.*, *Mumma v. Pennsy Supply, Inc.*, 448 F. App'x 295, 297 (3d Cir. 2011) (district court "properly dismissed . . . complaint in favor of arbitration").  However, because PwC requests a stay, the Court should stay the proceedings, rather than dismiss the Complaint.  *See Lloyd*, 369 F.3d at 269.

## CONCLUSION

For the reasons above, PwC respectfully requests that the Court issue an order compelling arbitration of Plaintiff's claims and staying this case.  In the alternative, PwC asks the Court to dismiss Plaintiff's Complaint.

Dated: January 20, 2021

Respectfully submitted,

/s/ *Jason C. Schwartz*
Jason C. Schwartz
Naima L. Farrell (*admitted pro hac vice*)
Anna Casey (*admitted pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539
jschwartz@gibsondunn.com
nfarrell@gibsondunn.com
acasey@gibsondunn.com

*Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 20, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ *Jason C. Schwartz*
Jason C. Schwartz