IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PAMELA MCCAREY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:20cv1744 |
| | ) | **Electronic Filing** |
| **PWC ADVISORY SERVICES, LLC,** | ) | |
| **PRICEWATERHOUSECOOPERS,** | ) | |
| **LLP,** | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

Pamela McCarey ("plaintiff") commenced this action seeking redress for alleged discrimination in the terms and conditions of employment. Presently before the court is defendants' motion to compel arbitration. For the reasons set forth below, the motion will be granted and the case will be stayed pending the outcome of the arbitration proceeding.

Plaintiff's First Amended Complaint sets forth claims for age and gender discrimination in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)(a) *et seq.*, the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the City of Pittsburgh Fair Employment Ordinance, Chapter 659.02 ("PFEO"). Defendants responded to plaintiff's initial complaint by filing a motion to compel arbitration and thereafter the parties stipulated that defendants' motion applies to plaintiff's First Amended Complaint.

Defendants contend that the record as currently supplemented unequivocally demonstrates that the parties previously entered into a contractual agreement to arbitrate their current dispute. Plaintiff maintains that her claims are not covered by the arbitration agreement,

the agreement is unenforceable in any event, defendants have failed to show the Title VII claims are arbitrable, and New York law expressly prohibits the arbitration of plaintiff's employment-related claims brought pursuant to New York law.

Whether a dispute must be submitted to arbitration "is a matter of contract between the parties" and "a judicial mandate to arbitrate must be predicated upon the parties' consent." Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764,771 (3d Cir. 2013) (quoting Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980)). Enforcement of such contractual agreements is authorized by the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, *et seq.*, provided the court is "satisfied that the making of the agreement for arbitration . . . is not in issue." Id. at § 4. "In the event that the making of the arbitration agreement is in issue, then 'the court shall proceed summarily to the trial' of that issue.'" Guidotti, 716 F.3d at 771 (quoting Par–Knit Mills, 636 F.2d at 54 (quoting 9 U.S.C. § 4)). "[T]he party who is contesting the making of the agreement has the right to have the issue presented to a jury." Id.

Review of a motion to compel arbitration can be undertaken pursuant to either Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure. Guidotti, 716 F.3d at 776. Which of these applies depends on the nature of the complaint and its supporting documents. On the one hand, "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" Id. at 776 (quoting Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp.2d 474, 482 (E.D. Pa. 2011)). In contrast, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in

2

issue," then the parties are entitled to discovery on the issue of arbitrability and thereafter the issue is to be reevaluated under Rule 56 and/or summarily tried as appropriate. Id.

Here, plaintiff argues the record fails to provide the requisite clarity needed to compel arbitration. She does not identify any factual matters in dispute regarding the formation of the arbitration agreement. Instead, she highlights several legal arguments as to why the agreement does not apply or is unenforceable under the specific circumstances presented. Because defendants' rely on submissions beyond the face of the First Amended Complaint and there does not appear to be a factual dispute or the need for discovery to resolve the parties' disagreement about the enforceability of the arbitration agreement, the court will employ the Rule 56 summary judgement standard and resolve the pending motion based on the legal arguments of counsel.[1]

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(A). Rule 56 "'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). Deciding a summary judgment motion requires the court to view the facts, draw all reasonable inferences and resolve all doubts in favor of the nonmoving party. Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

---

[1] As defendants aptly note, regardless of whether the Rule 12(b)(6) or Rule 56 standards apply, the inquiry "end[s] up in the same place." Defendants' Reply Brief (Doc. No. 32) at p. 10 n. 2 (quoting Davis v. Cintas Corp., 2019 WL 2223486, *4 (W.D. Pa. May 23, 2019)).

The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim. Nat'l State Bank v. Fed. Reserve Bank of New York, 979 F.2d 1579, 1581-82 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(E)) (emphasis in Matsushita). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" . . . "and cannot simply reassert factually unsupported allegations." Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992); Sec. & Exch. Comm'n v. Bonastia, 614 F.2d 908, 914 (3d Cir. 1980) ("[L]egal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment."). Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382-83 n.12 (3d Cir. 1990). If the non-moving party's evidence is merely colorable or lacks sufficient probative force summary judgment may be granted. Anderson, 477 U.S. at 249-50;

4

see also Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (although the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

The record as read in the light most favorable to plaintiff establishes the background set forth below. Plaintiff was employed by Defendants from 1997 until June 28, 2019. First Amended Complaint (Doc. No. 29) at ¶ 17. Plaintiff was promoted to Managing Director in 2014. Id. at ¶ 18. In that role, Plaintiff consistently performed her job duties in a highly competent manner. Id. at ¶ 19.

In May of 2018, Defendants informed Plaintiff that she would not receive a salary increase, effective July 1, 2018. Id. at ¶ 20. Younger and/or male Managing Directors received salary increases. Id. at ¶ 21.

On July 1, 2018, Plaintiff began reporting to Nikki Parham, Partner. Id. at ¶ 22. Plaintiff was the oldest Managing Director reporting to Parham; the majority of the Managing Directors reporting to Parham were men. Id. at ¶ 23. Parham thereafter excluded Plaintiff from tasks, projects, meetings, and communications relevant to Plaintiff's job duties and responsibilities. Id. at ¶ 24.

On January 23, 2019, Plaintiff transferred to defendants' New York City office at defendants' direction. Id. at ¶ 26. While at the New York office plaintiff was informed that her employment would be terminated as of April 15, 2019. Id. at ¶ 27. The stated reason was position elimination, which was a pretext. Id. at ¶¶ 27-28. Parham told Plaintiff that her termination had nothing to do with her performance, and that it was based on changes in Defendants' business. Id. at ¶ 29. No other Managing Director reporting to Parham was terminated at the time. Id. at ¶ 31.

5

In March of 2019, Defendants extended Plaintiff's employment to June 28, 2019. Id. at ¶ 33. Defendants terminated Plaintiff on June 28, 2019. Id. at ¶34. Plaintiff was 63 years of age on that date. Id. at ¶ 38. Following Plaintiff's termination, Defendants assigned Plaintiff's job duties to male and/or younger employees. Id. at ¶ 35.

Defendants utilize a partnership agreement that mandates retirement for all partners at age sixty (60) ("the Policy"). Id. at ¶ 38. The Policy evidences an age bias and impacts decisions regarding who will be made a Partner. Id. at ¶ 39. The Policy precludes any employee over age 60 from applying for and/or obtaining the position of partnership. Id. at ¶ 40. Plaintiff was prohibited from applying for and obtaining the position of partner once she turned 60. Id. at ¶ 42.

Plaintiff does not dispute that an agreement to "resolve all Covered Claims (as described below) exclusively through final and binding arbitration" exists between the parties. Arbitration Agreement (Doc. No. 16-1) at ¶ 1(a). The agreement further provides:

b. <u>Waiver of Trial; Waiver of Class, Collective, Consolidated or Representative Action.</u>

The parties mutually waive their right to a trial before a judge or jury in federal, state or local court in favor of arbitration under this Agreement.

This Agreement applies to Covered Claims that could have proceeded on an individual, class, collective, consolidated or representative basis, had they been pursued in another forum, such as a court of law. This Agreement requires that such claims be submitted to arbitration and that they be arbitrated on an individual basis only. Neither you nor the Firm is permitted to bring Covered Claims on a class, collective, consolidated or representative basis.

c. <u>Covered Claims.</u>

Except as expressly set forth below, this Agreement shall apply to all disputes, controversies and claims relating to or arising out of your employment agreement or termination of that agreement, or your application for employment, offer of employment, prospective employment or employment with the Firm, or your separation from such employment, that the Firm may have against you, or that you may have against the Firm (and/or against any of the Firm's partners, principals, employees, or agents), including those based on acts or omissions occurring prior to, on or after the Effective Date, which

6

could otherwise be resolved by a court or administrative agency ("Covered Claims"). Covered Claims include, without limitation, claims under the Fair Labor Standards Act, the Family and Medical Leave Act, the Equal Pay Act, the Americans with Disabilities Act, the Rehabilitation Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Worker Adjustment and Retraining Notification Act, the Employee Retirement Income Security Act, state and local wage and hour laws, state and local laws concerning discrimination and retaliation, and any other federal, state and local laws regarding employment, and all amendments thereto . . . .

Agreement at ¶¶ 1(b)-(c).

The agreement provides the following limitation on the arbitrator's authority:

f. <u>Arbitrator Powers and Authority; Limitations.</u>

The Arbitrator shall have the authority to resolve all Covered Claims with finality, in accordance with the rules of JAMS, except that the Arbitrator shall not have the authority to hear a Covered Claim on a class, collective, consolidated or representative basis, nor shall the Arbitrator have the authority to grant class-wide relief, relief on a consolidated basis, or other relief extending beyond the individual claimant.

The Arbitrator shall have the authority to award all remedies available to the Firm, and to you, individually, under applicable law.

Agreement at ¶ 3(f).

Among other areas, the Agreement excludes the following from the definition of a

"Covered Claim:"

d. <u>Claims Not Subject to Arbitration.</u>

Claims that arise under Title VII of the Civil Rights Act of 1964, which prohibits employment discrimination on the basis of race, color, religion, sex and national origin, unless and until federal law no longer prohibits the Firm from mandating arbitration of such claims;

Agreement at ¶ 1(d)(viii).

In support of her position that the agreement does not govern the claims she advances, plaintiff emphasizes that she is seeking "'declaratory relief, declaring the Policy invalid and in violation of the' ADEA, PHRA, and PFEO and seek[ing] 'an injunction against Defendants from further using the Policy.'" Plaintiff's Brief in Opposition (Doc. No. 26) at p.3. She highlights the

7

arbitrator's inability to hear a Covered Claim on a class, collective, consolidated or representative basis as well as the inability to grant relief beyond the individual claimant. She also highlights the restriction on Title VII claims. From plaintiff's perspective, these aspects of the agreement place her claims beyond the scope of the agreement and require that her claims be adjudicated in this court.

Plaintiff's opposition to defendants' motion is unavailing for multiple reasons. First, a valid and enforceable agreement to arbitrate exists between the parties. Plaintiff assented to the agreement by continuing to work for PwC after the Agreement's effective date. And any question as to the existence of the agreement was eliminated when plaintiff reaffirmed her acceptance of the agreement one month later when she was promoted to a managing director position and entered into an employment agreement that incorporated the arbitration agreement. She does not contend otherwise.

Second, the agreement applies to "all disputes, controversies and claims relating to or arising out of [plaintiff's] employment agreement or termination of that agreement . . . or [] separation from employment . . . ." Arbitration Agreement (Doc. No. 16-1) at ¶ 1c. The agreement further provides:

> Covered Claims include, without limitation, claims under the Fair Labor Standards Act, the Family and Medical Leave Act, the Equal Pay Act, the Americans with Disabilities Act, the Rehabilitation Act, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Worker Adjustment and Retraining Notification Act, the Employee Retirement Income Security Act, state and local wage and hour laws, state and local laws concerning discrimination and retaliation, and any other federal, state and local laws regarding employment, and all amendments thereto[.]

Id. Thus, the claims in plaintiff's First Amended Complaint clearly are "covered" claims under the parties' arbitration agreement and fall within its scope.

Third, the class action waiver in the agreement is valid and enforceable as written. It is now settled that parties may bargain away the ability 1) to seek relief in a representative

8

capacity or 2) to seek declaratory or injunctive relief on behalf of a class. The Supreme Court recognized that state law that bars the enforcement of arbitration agreements except where they preserve the availability of class-wide arbitration "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." AT&T Mobility v. Concepcion, 563 U.S. 333, 344 (2011). And the United States Court of Appeals for the Third Circuit has held that where parties elect to displace such broad forms of statutory relief as part of their individual agreement, the agreement must be enforced under the FAA. Litman v. Cellco Partnership, 655 F.3d 225, (3d Cir. 2011) ("Therefore, we must hold that, contrary to our earlier decisions in Homa [v. American Express Co., 558 F.3d 225 (3d Cir. 2009)] and in this case, the rule established by the New Jersey Supreme Court in Muhammad [v. County Bank of Rehoboth Beach, Del., 912 A.2d 88 (N.J. 2006)] is preempted by the FAA. It follows that the arbitration clause at issue here must be enforced according to its terms, which requires individual arbitration and forecloses class arbitration."); accord Gilmer v. Interstate/Johnson Lane Corp., 895 F.2d 195, 199 (4th Cir. 1990) ("However, any lack of congruence which may exist between the remedial powers of a court and those of an arbitrator is hardly fatal to arbitration. So long as arbitrators possess the equitable power to redress individual claims of discrimination, there is no reason to reject their role in the resolution of ADEA disputes. That arbitrators may lack the full breadth of equitable discretion possessed by courts to go beyond the relief accorded individual victims does not deny the utility of this alternative means of resolving disputes."). It follows that to the extent plaintiff seeks "equitable and injunctive" relief beyond the arbitrator's authority to award such relief on an individual basis, the invocation of such remedial measures does not bar defendants' efforts to limit the parties to the forms and scope of relief embodied in their agreement.

9

Fourth, defendants have sufficiently established that plaintiff's employer, PwC, was not prohibited from arbitrating Title VII claims on the date plaintiff filed this lawsuit or at anytime through the briefing on the instant motion. See McCrory Declaration (Doc. No. 16-4) at ¶ 3. This is sufficient to satisfy the Title VII limitation in the agreement. See Ashford v. PricewaterhouseCoopers LLP, 954 F.3d 678, 684 (4th Cir. 2020) ("By using "or," the parties agreed Title VII claims were subject to arbitration if PwC or any of its subsidiaries or affiliates were no longer prohibited from mandating arbitration of Title VII claims. Ashford sued PwC, her employer. Therefore, we need only determine if it is prohibited by federal law from mandating arbitration of Title VII claims."). And for the sake of argument, neither PricewaterhouseCoopers LLP nor PwC Advisory Services LLC or any of their subsidiaries or affiliates were a party to any contract that would preclude enforcement of the agreement at any time between April 9, 2018, and the briefing on defendants' motion to compel. See McCrory Supplemental Declaration (Doc. No. 32-1) at ¶¶ 3-4.

Fifth, plaintiff's reliance on her state law claims pursuant to Section 7515 of New York law is misplaced. The weight of authority recognizes that Section 7515 is preempted by the FAA. See, e.g., White v. WeWork Cos., No. 20-cv-1800 (CM), 2020 WL 3099969, at *5 (S.D.N.Y. June 11, 2020) ("Since CPLR § 7515 is displaced by the FAA, [the plaintiff] may not rely on it to defeat WeWork's motion to compel arbitration."); Latif v. Morgan Stanley & Co., No. 18-cv-11528 (DLC), 2019 WL 2610985, at *3 (S.D.N.Y. June 26, 2019) ("The FAA sets forth a strong presumption that arbitration agreements are enforceable and this presumption is not displaced by § 7515."); Feuer v. Stoler of Westbury, Inc., 2021 WL 4820605, *2 (E.D. N.Y. Oct. 15, 2021) (noting that "[s]everal district courts in this circuit have squarely rejected Plaintiff's argument regarding the application of CPLR § 7515 based on a New York choice of law provision in an arbitration agreement" and following that

weight of authority on the issue of FAA preemption) (collecting cases). And this recognition is the logical extension of the Court's holdings in Concepcion that "[w]hen state law prohibits outright the arbitration of a particular type of claim, . . . [t]he conflicting rule is displaced by the FAA." Gilbert v. Indeed, Inc., 513 F. Supp.3d 374, 396 (S.D. N.Y. 2021) (quoting Concepcion, 563 U.S. at 341). Consequently, the state of New York State its derivative local governments lack the power to reach a contrary conclusion and to exclude such claims from the reach of the FAA. Id. (citing Southland Corp. v. Keating, 465 U.S. 1, 5, 16 (1984)).

Finally, enforcement of the parties' contract does not impermissibly impinge on plaintiff's Seventh Amendment right to a jury trial. "Although the right to a jury trial is guaranteed by the Seventh Amendment to the United States Constitution, like all constitutional rights it can be waived by the parties." In re City of Philadelphia Litigation, 158 F.3d 723, 726 (3d Cir. 1998) (citing United States v. Moore, 340 U.S. 616, 621 (1951). And unlike other constitutional rights, "the right to a jury trial can be waived by inaction or acquiescence." Id. (citing Cooper v. Loper, 923 F.2d 1045, 1049 (3d Cir. 1991) and 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2321 (2d ed. 1995)).

To be valid, a jury trial waiver must be knowingly and voluntarily made. Tracinda v. DaimlerChrysler AG, 502 F.3d 212, 222 (3d Cir. 2007). Entering into an employment contract with an arbitration provision that clearly and unmistakably waives the employee's ability to vindicate discrimination claims in court clearly effectuates such a waiver provided that any federal anti-discrimination statute involved does not exclude arbitration as an appropriate forum. Darrington v. Milton Hershey School, 958 F.3d 188, 192 (3d Cir. 2020). And both ADEA and Title VII claims are arbitrable under the FAA. Id. ("Title VII claims are arbitrable.") (citing Seus v. John Nuveen & Co., 146 F.3d 175, 183 (3d Cir. 1998) ("Although the holding in Gilmer involved only ADEA claims and not Title VII claims, numerous courts

have determined that the holding is equally applicable to Title VII proceedings.") (collecting cases)).

Here, plaintiff knowingly and voluntarily entered into a valid employment contract with an enforceable arbitration agreement. None of her federal claims are predicated on a statute that precludes arbitration as an appropriate forum. It follows that plaintiff waived her Seventh Amendment right to a jury trial and her federal discrimination claims are subject to resolution by arbitration.

For the reasons set forth above, the record demonstrates that the gateway questions to arbitrability must be answered in favor of sending plaintiff's claims against defendants to arbitration. As a result, defendants' motion to compel arbitration and to stay proceedings will be granted. An appropriate order will follow.

<u>Date: August 3, 2023</u>

<u>s/David Stewart Cercone</u>
David Stewart Cercone
Senior United States District Judge

cc:    Colin Patrick Saltry, Esquire
       Jason C. Schwartz, Esquire

       (*Via CM/ECF Electronic Mail*)